UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\- x

|  |  |
|---|---|
| DEUTSCHE BANK SECURITIES INC., | : |
| Plaintiff, | : |
| - against - | : |
| THE RESERVE FUND and THE RESERVE PRIMARY FUND, | : |
| Defendants. | : |

Civil Action No. 09 CV 2379 (PGG)

\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\- x

DEFENDANTS' MEMORANDUM OF LAW
IN OPPOSITION TO
DEUTSCHE BANK SECURITIES' MOTION TO REMAND

TRACHTENBERG RODES & FRIEDBERG LLP

David G. Trachtenberg, Esq.
Judith L. Hancock, Esq.
545 Fifth Avenue
New York, New York  10017
Telephone:  (212) 972-2929
Fax:  (212) 972-7581

*Attorneys for Defendants The Reserve Fund and
The Primary Fund*

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ................................................................................1

ARGUMENT .........................................................................................................3

I.     DEUTSCHE BANK'S BRIEF IGNORES BOTH RELEVANT DOCTRINE AND
      AUTHORITIES CITED IN DEFENDANTS' PRIOR BRIEFS ...........................3

     A.    Deutsche Bank Would Have This Court Ignore Judge Zobel's Decision
         Denying Remand In A Related Case ....................................................3

     B.    Deutsche Bank Ignores The Artful Pleading Rule..................................4

     C.    Deutsche Bank Ignores Arguments and Leading Authorities Cited In
         Defendants' Prior Briefs. ...................................................................5

         1.    Deutsche Bank's Breach of Contract Claim Raised Disputed and
             Substantial Issues of Federal Law...............................................5

         2.    Deutsche Bank's Request for Injunctive Relief Also Raises
             Disputed and Substantial Issues of Federal Law. ................................10

     D.    Deutsche Bank Cites Inapposite or Manifestly Distinguishable Cases. ...............11

         1.    Although Securities Regulation Is A Special Area of "Intense
             Federal Concern", Deutsche Bank Cites Numerous <u>Non-Securities</u>
             Cases. ..................................................................................11

         2.    Deutsche Bank Creates A Straw Man By Mischaracterizing
             Defendants' Contentions. ...........................................................15

CONCLUSION.......................................................................................................19

# TABLE OF AUTHORITIES

## CASES

*Broder v. Cablevision Sys. Corp.*, 418 F.3d 187 (2d Cir. 2005)...................................................5, 17

*Caggiano v. Pfizer Inc.,* 384 F. Supp. 2d 689 (S.D.N.Y. 2005) ....................................................14

*Citigroup, Inc. v. Wachovia Corp.,* No. 08 Clv. 8668 (SAS), 2009 WL 749864 (S.D.N.Y.
    Mar. 20, 2009)................................................................................................................12, 13

*City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156 (1997)...........................................5

*D'Alessio v. New York Stock Exchange*, 258 F.3d 93 (2d Cir. 2001) .........................................5, 11

*Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677 (2006)....................................4, 5

*Fermin v. Moriarty*, No. 96 Civ. 3022 (MBM), 2003 Wl 21787351 (S.D.N.Y. Aug. 4,
    2003) ............................................................................................................................14

*Finance and Trading, Ltd. v. Rhodia S.A.*, 2004 WL 2754862 (S.D.N.Y. 2004)..........................16

*Firefighters' Ret. Sys. v. Regions Bank,* No. 08-Civ. 429 (C), 2008 WL 4664015 (M.D.
    La. Oct. 21, 2008) ..........................................................................................................16

*Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Trust for S. Cal.,*
    463 U.S. 1 (1983)...........................................................................................................5

*Frank v. Bear Stearns & Co.*, 128 F.3d 919 (5th Cir. 1997) .........................................................16

*Frayler v. N.Y. Stock Exch.,* 118 F. Supp. 2d. 448, 450 (S.D.N.Y. 2000)....................................11

*Gold v. Blinder, Robinson & Co., Inc.*, 580 F. Supp. 50 (S.D.N.Y. 1984) .............................11, 12

*Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.,*
    545 U.S. 308 (2005)................................................................................................ *passim*

*Guardian Pipeline, L.L.C. v. 295.49 Acres of Land,*
    Nos. 08-C-0028, 54, 29, 30, 2008 WL 1751358, at *9 (E.D. Wisc. Apr. 11, 2008) .................8

*Hernandez v. Conriv Realty Assocs.*, 116 F.3d 35 (2d Cir. 1997)................................................14

*Ins. Corp. of New York v. Monroe Bus Corp.*, 491 F. Supp. 2d 430 (S.D.N.Y. 2007)..........6, 7, 11

*J.A. Jones Constr. Co. and Daidone Elec. Of N.Y., Inc. v. City of New York,* 753 F. Supp.
    497 (S.D.N.Y. 1990)........................................................................................................15

*Marcus v. AT&T Corp.*, 138 F.3d 46 (2d Cir. 1998) ...............................................................4, 5, 7

*Merrill Dow Pharmaceuticals, Inc. v. Thompson*, 478 U.S. 804 (1986) ..................................14, 15

*In re Methyl Tertiary Butyl Ether ("MTBE") Products Liability Litigation*, 488 F.3d 112 (2d Cir. 2007) ...................................................................................................…. 14

*Nicodemus v. Union Pac. Corp.*, 440 F.3d 1227 (10th Cir. 2006) .................................................8

*Nissan North America, Inc. v. The Reserve Fund, et al.,* Civil Action No. 09-10390 (D. Mass) ...........................................................................................................2, 3, 4

*Opulent Fund, L.P. v. Nasdaq Stock Market, Inc.,* No. C-07-03683, 2007 WL 3010573 (N.D. Cal. Oct. 12, 2007) ...............................................9

*Quayle v. MCI Worldcom,Inc.*, No. C-00-3694 (SC), 2001 WL 1329594 (N.D. Cal. Oct. 22, 2001) ...................................................................................................15

*Rivera v. Phipps Houses Servs., Inc.,* No. 01 Civ. 2324 (HB), 2001 WL 740779 (S.D.N.Y. 2001) ...............................................................................................15

*Runyan v. River Rock Entm't Auth.,* No. 08 Civ. 1924 (VRW), 2008 WL 3382783 (N.D. Cal. Aug. 8, 2008) .........................................................................................15

*State of California v. Dynegy, Inc.*, 375 F.3d 831 (9th Cir. 2004)..............................................8

*Sung v. Wasserstein*, No. 05 Civ. 7138 (VM), 2006 WL 435449 (S.D.N.Y. Feb. 21, 2006) ...........................................................................................................16

## FEDERAL STATUTES AND REGULATIONS

Investment Company Act of 1940 ....................................................................................*passim*

15 U.S.C. § 80a-1(b)(3) ........................................................................................11, 12, 18

28 U.S.C. § 1331..............................................................................................................5

28 U.S.C. § 1441 (b) .........................................................................................................5

17 C.F.R. § 270.2a-4(a)(1).................................................................................................9

17 C.F.R. § 270.22c-1 .......................................................................................................9

**OTHER**

Statement of Timothy F. Geithner, United States Secretary of the Treasury, before the
United States House of Representatives' Committee on Financial Services, delivered
on March 26, 2009 ...................................................................................................................18

Defendants The Reserve Fund (the "Trust") and The Primary Fund (the "Primary Fund") (collectively, "Defendants") respectfully submit this memorandum of law in opposition to the motion made by plaintiff Deutsche Bank Securities Inc. ("Deutsche Bank") to remand this action to the Supreme Court of the State of New York.

## **Preliminary Statement**

Deutsche Bank's motion to remand is the latest in a series of motions made in nine of the over thirty actions pending against Defendants and arising out of the "run" on the Primary Fund triggered by the unprecedented financial crisis of September 2008.

This law firm represents Defendants in this action and in three others -- namely, *Banc of America Securities LLC v. The Reserve Fund and Primary Fund,* Civil Action No. 08-CV-11204 (PGG); *E\*Trade Financial Corporation, et al. v. The Reserve Fund and The Primary Fund,* Civil Action No. 09-2378 (PGG); and *Wal-Mart Stores, Inc. v. The Reserve Fund and The Primary Fund,* Civil Action No. 09-CV-1048 (PGG).

Defendants have previously served briefs and counsel declarations in opposition to the remand motions made by the plaintiffs in *Banc of America* and *Wal-Mart.* In addition, Defendants are serving a brief and counsel declaration in opposition to the remand motion made by the plaintiffs in *E\*Trade* today. In an effort to avoid burdening the Court with a repetitive recitation of the basic background facts and applicable law, we respectfully refer the Court to our brief in *Banc of America,* a copy of which is attached to the accompanying declaration of David G. Trachtenberg, Esq. dated April 29, 2009 (the "Trachtenberg Declar.").[1]

---

[1]   The Trachtenberg Declar. contains copies of the same exhibits that were attached to Mr. Trachtenberg's declaration opposing the remand motion in *Banc of America,* with the deletion of certain *Banc of America*-specific exhibits and with the addition of the following five new Exhibits:  Exhibit 2 (copy of Deutsche Bank's summons and complaint); Exhibit 13 (copy of Defendants' notice of removal filed herein); Exhibit 15 (copy of Defendants' memorandum of law dated April 8, 2009 opposing Banc of America's motion to remand); Exhibit 16 (copy of

Deutsche Bank does not dispute the unprecedented nature of the financial crisis giving rise to the various actions against Defendants.

Nor does Deutsche Bank dispute that it would be vastly more efficient and far less costly for all of the actions pending against Defendants to be administered and adjudicated in a single court. Nor does Deutsche Bank dispute that this means that more of Defendants' diminishing funds will be available for distribution to the Primary Fund's tens of thousands of shareholders if the pending actions are resolved in a coordinated and streamlined fashion in a single court.

Further, and tellingly, although Deutsche Bank obviously had the opportunity to review Defendants' prior briefs opposing remand in the related cases, Deutsche Bank's brief not only ignores the artful pleading doctrine of federal question jurisdiction, but also ignores leading Second Circuit and Southern District authorities previously cited by Defendants. In addition, the cases Deutsche Bank cites for the proposition that this action does not raise "any federal question at all" (Deutsche Bank's brief, p. 2) are factually distinguishable, pre-date the Supreme Court's ruling in *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308 (2005), are from other jurisdictions, or arose outside of the context of federal securities law, which is an area of "intense federal concern".

---

Defendants' memorandum of law dated April 13, 2009 opposing plaintiff's motion to remand in *Nissan North America, Inc. v. The Reserve Fund, et al.,* Civil Action No. 09-10390 (D. Mass.); and Exhibit 17 (copy of ECF notice of Judge Rya W. Zobel's April 15, 2009 Order denying plaintiff's remand motion in *Nissan*).

## ARGUMENT

**I.     DEUTSCHE BANK'S BRIEF IGNORES BOTH RELEVANT DOCTRINE AND AUTHORITIES CITED IN DEFENDANTS' PRIOR BRIEFS.**

### A.     Deutsche Bank Would Have This Court Ignore Judge Zobel's Decision Denying Remand In A Related Case.

Deutsche Bank's brief (p. 1) observes that "both as a practical matter and under principles of res judicata", the first decision issued by this Court on one of the pending remand motions will have substantial precedential value.

That concession notwithstanding, Deutsche Bank seeks to marginalize the recent Order issued by Judge Rya W. Zobel of the District of Massachusetts denying the plaintiff's motion to remand in the related case of *Nissan North America, Inc. v. The Reserve Fund*, Civil Action No. 09-10390 (D. Mass.). Deutsche Bank's brief (p. 1, n. 1)  As in the case at bar, the plaintiff in *Nissan* asserted solely state law claims in an effort to avoid federal jurisdiction. Defendants thereafter removed the matter to federal court, at which point plaintiff made a motion to remand the matter back to state court.  On April 15, 2009, United States District Judge Zobel denied plaintiff's motion to remand.

Deutsche Bank argues that Judge Zobel's decision should not be given significant precedential effect because Judge Zobel did not render a written decision and because defendants had amended their notice of removal in *Nissan* to assert diversity as an additional basis for federal jurisdiction.

However, although it is true that Judge Zobel did not state her reasons for denying remand in *Nissan*, it should be noted that the arguments which Defendants made to Judge Zobel concerning federal question jurisdiction were very similar, if not identical, to the arguments which Defendants have presented in this Court in the cases in which remand motions are

pending.  *See* Trachtenberg Declar., Ex.16, pp. 1-18 (a copy of Defendants' brief opposing the

remand motion in *Nissan*) and Ex. 17 (a copy of Judge Zobel's Order in *Nissan*).

**B.      Deutsche Bank Ignores The Artful Pleading Rule.**

Given that Deutsche Bank obviously had the opportunity to review the extensive

briefing on the prior remand motions, it is remarkable that Deutsche Bank trumpets the "well-

pleaded complaint" doctrine while ignoring its corollary, the "artful pleading" rule.  As noted in

Defendants' prior briefs, the artful pleading doctrine "prevents a plaintiff from avoiding removal

'by framing in terms of state law a complaint the real nature of [which] is federal, regardless of

plaintiff's characterization, or by omitting to plead necessary federal questions in a complaint.'"

*Marcus v. AT&T Corp.*, 138 F.3d 46, 55 (2d Cir. 1998) (quoting *Derrico v. Sheehan Emergency

Hosp.*, 844 F.2d 22, 27 (2d Cir. 1988)).  *See* Trachtenberg Declar., Ex. 15, pp. 7-8.

A complaint need not specifically reference a federal law to "arise under" it for

removal purposes.  The Supreme Court, in upholding the removal of state law claims between

non-diverse parties, has explained that federal courts have "recognized for nearly 100 years that

in certain cases federal-question jurisdiction will lie over state-law claims that implicate

significant federal issues." *Grable*, 545 U.S. at 312.  As the Supreme Court later reiterated, "a

case 'aris[es] under' federal law within the meaning of § 1331 . . . if 'a well-pleaded complaint

establishes either that federal law creates the cause of action <u>or</u> that the plaintiff's right to relief

necessarily depends on resolution of a substantial question of federal law.'" *Empire

Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 690 (2006) (citation omitted, emphasis

added).  Federal jurisdiction therefore exists even where, as here, state law nominally creates the

cause of action, when "the plaintiff's well-pleaded complaint raises issues of federal law." *City

of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 163 (1997); *see also Franchise Tax Bd. of*

*Cal. v. Constr. Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 9 (1983) (federal question jurisdiction will lie if the vindication of a state law right "turn[s] on some construction of federal law"); *Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 194 (2d Cir. 2005) (*Grable* "establishes that the existence of 'a cause of action created by federal law' is not a necessary condition for federal-question jurisdiction under 28 U.S.C. § 1331 or removal jurisdiction under 28 U.S.C. § 1441(a).").

### C.   Deutsche Bank Ignores Arguments And Leading Authorities Cited In Defendants' Prior Briefs.

Tellingly, Deutsche Bank's brief ignores arguments and apposite authorities referenced in Defendants' prior briefs opposing the other remand motions. *See, e.g.*, Trachtenberg Declar., Ex. 15, pp. 7-18.

### 1.   Deutsche Bank's Breach Of Contract Claim Raises Disputed And Substantial Issues Of Federal Law.

As noted in Defendants' prior briefs, the very document that plaintiff argues dictates how Defendants should have handled plaintiff's redemption requests -- the Primary Fund's prospectus (*see* Trachtenberg Declar., Ex. 2, ¶ 13) -- is a creature of federal law.

As further noted in Defendants' prior briefs, "it is the propriety of the [Defendants'] actions, as prescribed under federal law, that is at the heart of [Deutsche Bank's and the other related plaintiffs'] allegations." *D'Alessio v. New York Stock Exchange*, 258 F.3d 93, 102 n.6, 103 (2d Cir. 2001) (holding that removal was proper because the "vindication of rights and definition of relationships <u>created by federal law</u>" depended on the construction of federal law) (emphasis in original); *see also Marcus*, 138 F.3d at 55-56 (holding that state "breach of warranty claim arises under federal law," and was properly removed because the

"only contract" between AT&T and its customers was a "tariff" required to be "filed with the FCC pursuant to" 47 U.S.C. § 203(a)).

It is particularly noteworthy that Deutsche Bank's brief ignores a recent Southern District of New York case which was extensively discussed in Defendants' prior briefs -- namely, *Insurance Corporation of New York v. Monroe Bus Corp.*, 491 F. Supp. 2d 430 (S.D.N.Y. 2007). In that case, the Insurance Corporation of New York ("InsCorp") filed a lawsuit seeking reimbursement from its insureds, pursuant to the parties' contract, for amounts paid by InsCorp to satisfy a judgment in an underlying state court action relating to a bus accident. *Id.* at 431. Because the parties were not diverse, InsCorp asserted that its claims "arise under" the federal Bus Regulatory Reform Act of 1982. *Id.* at 433. Judge Chin raised the issue of subject matter jurisdiction *sua sponte*, observing that "[i]nsurance coverage claims usually are breach of contract claims governed by state law," and that the Bus Regulatory Reform Act "does not explicitly provide for a private cause of action by an insurer against an insured." *Id.* at 435; *see also id.* at 434.

Nevertheless, Judge Chin held that the contractual rights at issue "clearly are 'creations of federal law'" over which federal courts have original jurisdiction. *Id.* at 435 (quoting *Jackson Transit Auth. v. Local Div. 1285, Amalgamated Transit Union, AFL-CIO-CLC*, 457 U.S. 15, 23 (1982)). As Judge Chin explained, the Bus Regulatory Reform Act required the Secretary of Transportation to promulgate regulations prescribing the "minimum levels of financial responsibility" for certain motor vehicle carriers. *Id.* at 435-36 (quoting 49 U.S.C. § 31138(a)). The Department of Transportation, in turn, required carriers to obtain an insurance policy with a particular endorsement on federally-mandated Form MCS-90B. *See id.* at 436. The court therefore held that InsCorp's claims were properly in federal court. *Id.*

The federal basis for the Defendants' asserted contractual obligations to Deutsche Bank -- and the jurisdiction of this Court to review the Defendants' conduct in conformity with those obligations -- are virtually indistinguishable from those in *InsCorp*. As Judge Chin stated:

> [H]ere, the principal rights and obligations were created by federal law. The contractual provisions in question . . . were not just authorized by federal law but were created and required by federal law. The form itself is prescribed by federal law, and it is the only form . . . that the federal regulations permit . . . .

*Id.* at 436-37 (emphasis in original); *see also Marcus*, 138 F.3d at 55-56.

Judge Chin's reasoning applies equally here.   Like InsCorp, Deutsche Bank bases its claims upon a document the very existence of which is mandated by federal law (the Investment Company Act) and alleges that Defendants breached provisions that are prescribed by that federal law.  If anything, and like the cases brought by Banc of America, E*Trade and Wal-Mart, this case presents an even stronger basis for federal jurisdiction than *InsCorp*. This is because the federal agency responsible for monitoring compliance with Defendants' obligations not only issued an Order effective September 17, 2008 (the "SEC Order"), pursuant to Section 22 (e) of the Investment Company Act, authorizing Defendants to suspend redemptions indefinitely pending the Primary Fund's liquidation, but also is actively engaged in supervising the Primary Fund's liquidation  and redemption process. *See* Trachtenberg Declar., Ex. 5 (copy of SEC Order); Ex. 7 (plan of liquidation); and Exs. 8, 9 and 10 (press releases announcing three interim distributions under the liquidation plan being carried out under SEC supervision).

Further, the issues in this case, like those in many of the other cases already before this Court, are not limited to whether Defendants' conduct was justified or permissible under the Investment Company Act and the SEC Order.  On the contrary, the issues also include the important and fundamental question of what, if anything, was agreed upon between the

parties. What Deutsche Bank's argument seeks to obscure is that any analysis of the nature and scope of the parties' meeting of the minds necessarily requires an inquiry into the requirements and details of the Investment Company Act, as well as the regulations promulgated thereafter. Accordingly, the viability of any cause of action founded upon the suspension of redemptions necessarily turns upon questions of federal law.

"The federal issue, therefore, arises in Plaintiffs' case-in-chief, not by way of defense." *Nicodemus v. Union Pac. Corp.*, 440 F.3d 1227, 1235 (10th Cir. 2006). Accordingly, Deutsche Bank's claim challenging Defendants' suspension of redemptions, authorized by and implemented pursuant to the Investment Company Act and the SEC Order, raises a substantial, and disputed, question of federal law. *See State of Cal. v. Dynegy, Inc.*, 375 F.3d 831, 839, 841 (9th Cir. 2004) (holding that substantial federal question jurisdiction exists where the "state lawsuit turns, entirely, upon the defendant's compliance with a federal regulation."); *Guardian Pipeline, L.L.C. v. 295.49 Acres of Land*, Nos. 08-C-0028, 54, 29, 30, 2008 WL 1751358, at *9 (E.D. Wisc. Apr. 11, 2008) ("By asking the state courts to declare that Guardian was not entitled to utilize the condemnation procedure authorized by federal law to exercise the power of eminent domain granted it by a federal agency, the State Plaintiffs raised a significant issue of federal law.").

Yet further, Deutsche Bank's allegation that Defendants were contractually obligated to redeem Deutsche Bank's shares of the Primary Fund at a NAV of at least $1.00 per share (*see* Trachtenberg Decl., Ex. 2,  ¶¶ 40-3) also raises disputed issues of federal law.

This is because the SEC has promulgated a series of regulations that govern the Trust's calculation of the Primary Fund's NAV.  SEC Rule 22c-1 requires the Primary Fund to redeem its securities "at a price based on the current net asset value of such security which is

next computed after receipt of a tender of such security for redemption." 17 C.F.R.§ 270.22c-1. SEC Rule 2a-4, in turn, provides that, in valuing portfolio securities for purposes of calculating the "current net asset value," the Trustees shall use the "current market value" of such securities where "quotations are readily available," and, where they are not "readily available" -- as was the case for the Primary Fund's Lehman securities on September 15-17, 2008 -- such securities "shall be valued at fair value as determined in good faith by the board of directors of the registered company." 17 C.F.R. § 270.2a-4(a)(1).

To establish that Defendants breached their duties to investors by allegedly miscalculating the Primary Fund's NAV, therefore, Deutsche Bank must plead and prove that the Trustees somehow exceeded their authority under the SEC's regulatory framework in determining the Primary Fund's NAV. That issue is federal in nature, and should be resolved by a federal court. Indeed, a similar issue was addressed in *Opulent Fund, L.P. v. Nasdaq Stock Market, Inc.*, No. C-07-03683, 2007 WL 3010573, (N.D. Cal. Oct. 12, 2007), in which the Opulent Fund's tort claims arose "from Nasdaq's alleged failure to calculate the price of the Nasdaq-100 in accord with the SEC-approved regulation governing the Nasdaq-100's existence." *Id.* at *3. In denying plaintiff's motion to remand in that case, the court relied on the fact that the "only way to judge Nasdaq's conduct is in reference to the SEC-approved rules governing how the Nasdaq-100 is calculated." *Id.* Here, too, the "only way to judge" whether the Primary Fund's NAV was properly calculated "is in reference to the SEC-approved rules governing how the [NAV] is calculated," *id.*, and Deutsche Bank's motion to remand should be denied for the same reasons.

## 2.  Deutsche Bank's Request For Injunctive Relief Also Raises Disputed And Substantial Issues Of Federal Law.

Deutsche Bank's pleading also seeks preliminary and injunctive relief barring Defendants from making *any* distributions to *any* other investors, unless and until Deutsche Bank has received the full amount of the redemption proceeds that Deutsche Bank claims are owed to it, plus interest. *See* Trachtenberg Declar., Ex. 2, p. 11.

Even assuming, *arguendo,* that Deutsche Bank's breach of contract claim did not raise substantial federal questions -- which it certainly does -- Deutsche Bank's request for injunctive relief in and of itself raises substantial federal questions.

This is because Defendants, acting pursuant to the authority vested in them under the Investment Company Act, and under the supervision of the SEC, are currently implementing a liquidation plan for the Primary Fund.   To date, some $43.8 billion, or approximately 85% of the assets that the Primary Fund held as of the close of business on September 15, 2008, have been distributed to tens of thousands of investors, including Deutsche Bank. *See* Trachtenberg Declar., Ex. 7 (liquidation plan) and Exs.  8, 9 and 10 (press releases announcing first three interim distributions under liquidation plan).

Deutsche Bank's intention to seek injunctive relief barring the implementation of the liquidation plan necessarily turns on whether Defendants have properly exercised their authority under the Investment Company Act, and it infringes upon the SEC's federal regulatory authority, under whose oversight the plan is being implemented.

Moreover, Deutsche Bank's requested injunctive relief, if granted, would place Deutsche Bank's interests ahead of those of thousands of other investors receiving distributions under the liquidation plan, in direct contravention of federal law.   Notably, the Investment Company Act prohibits mutual funds from discriminating against shareholders and requires them

to act in the interests of all shareholders equally.  15 U.S.C. § 80a-1(b)(3).  To exempt Deutsche Bank from the liquidation plan would thus violate the "anti-discrimination rule" embedded as a core principle underlying the Investment Company Act.  *Id.*

Additionally, Deutsche Bank's requested injunctive relief, if granted, would seriously prejudice all of the other plaintiffs who have not engaged in artful pleading to avoid federal jurisdiction and whose federal question claims are currently before this Court.

**D.      Deutsche Bank Cites Inapposite or Manifestly Distinguishable Cases.**

Rather than address *InsCorp* or the other New York authorities cited in Defendants' prior briefs, Deutsche Bank's argument is supported by inapposite or manifestly distinguishable cases.

**1.      Although Securities Regulation Is A Special Area of "Intense Federal Concern", Deutsche Bank Cites Numerous <u>Non-Securities</u> Cases.**

The courts of this Circuit have repeatedly found that the interpretation and application of federal securities law are matters of "intense" federal concern.  *See D'Alessio v. New York Stock Exchange*, 258 F.3d 93, 100 (2d Cir. 2001) ("areas of undisputed strong federal interest"); *Frayler v. N.Y. Stock Exch.*, 118 F. Supp. 2d 448, 450 (S.D.N.Y. 2000) ("a matter of intense federal concern").

Notwithstanding the peculiarly intense nature of federal interest in regulation of securities markets and the operations of investment companies, Deutsche Bank cites numerous <u>non-securities</u> cases, most of which pre-dated the Supreme Court's 2005 ruling in *Grable* and all of which are clearly distinguishable.

For instance, in *Gold v. Blinder, Robinson & Co., Inc.*, 580 F. Supp. 50, 53-4 (S.D.N.Y. 1984) (Deutsche Bank's brief, pp. 6-7, 14), a shareholder sued in New York state court asserting, *inter alia,* conversion and breach of contract claims arising out of the defendant

corporation's failure to deliver shares of stock that the plaintiff had purchased.  After untimely

removing the case to federal court, the defendant opposed remand on the theory that the

plaintiff's <u>discovery requests</u> seeking documents that the defendant was required to keep by

federal law had somehow revealed that the plaintiff was advancing a federal securities law claim.

The federal court sharply rejected this dubious argument, noting that plaintiff's discovery

requests for federally-mandated documents did "not suddenly convert the underlying claim into a

federal cause of action".  *Id.*, at 54.

Here, in marked contrast, Defendants' removal was timely and is based not on

discovery requests but on the substantial federal questions raised by Deutsche Bank's complaint

challenging both the Defendants' suspension of redemptions pursuant to the Investment

Company Act and the SEC Order <u>and</u> their implementation of a dissolution plan under which all

shareholders are treated equally as required by the Investment Company Act's "anti-

discrimination rule" (*see* 15 U.S.C. § 80a-1(b)(3)).

Another inapposite case cited in Deutsche Bank's brief (pp. 6, 11, 13), *Citigroup,*

*Inc. v. Wachovia Corp.*, No. 08 Civ. 8668 (SAS), 2009 WL 749864 (S.D.N.Y. Mar. 20, 2009),

arose out of Citigroup's negotiations with Wachovia to buy it, wherein those parties entered into

a "standstill" agreement under which Wachovia agreed not to negotiate or enter into any

competing acquisition agreement during a specified exclusivity period.  On the verge of signing

an acquisition agreement with Citigroup, Wachovia received a more attractive offer from Wells

Fargo and consummated a merger with it.

Citigroup sued Wachovia for breaching their standstill agreement and sued Wells

Fargo for tortiously interfering with that agreement.  Although Citigroup's original complaint

had also alleged that the Wachovia-Wells Fargo merger agreement should be invalidated under

the federal Emergency Economic Stabilization Act ("EESA"), Citigroup amended its complaint to delete the EESA cause of action. Defendants removed the case, and they opposed remand on the ground that the reference to the EESA in the prayer for relief indicated that Citigroup was asserting a cause of action under that federal statute and that the EESA <u>completely preempted</u> Citigroup's state law claims. The court found that the reference to the EESA in Citigroup's prayer for relief was an inadvertent typographical error and that, in any event, the EESA did not completely preempt Citigroup's state law claims. *Id.*, at **5-6. In addition, the court rejected defendants' argument that, even if not completely preempted, Citigroup's state law claims nonetheless presented substantial federal questions, noting that defendants' counsel "could not identify any element of either of plaintiff's claims that would require analysis or interpretation of a federal statute. (footnote deleted)". *Id.*

Thus, in *Citigroup* a breach of contract claim was based on a typical standstill agreement between two private parties engaged in merger negotiations. Neither the existence of the standstill agreement nor its terms were prescribed by federal statute. Nor had any federal agency stepped in and issued an order suspending performance of that standstill agreement. Nor was there any federal regulatory system in place evidencing an intense federal concern about the meaning, scope, and application of standstill agreements.

Here, in marked contrast, the existence and terms of any contractual relationship between Deutsche Bank and Defendants was prescribed by an extensive federal regulatory system; a federal agency authorized Defendants' suspension of redemptions; and a federal agency is actively supervising the Primary Fund's liquidation pursuant to the federal regulatory system, including the Investment Company Act's anti-discrimination rule requiring that all shareholders be treated equally.

The numerous other non-securities cases cited by Deutsche Bank are similarly

inapposite. *See, e.g., In re Methyl Tertiary Butyl Ether ("MTBE") Products Liability Litigation*,

488 F.3d 112 (2d Cir. 2007) (state government claims against MTBE manufacturers for allegedly

contaminating public drinking water supplies were not removable because, *inter alia*, federal law

did not supersede state standards on public drinking water); *Hernandez v. Conriv Realty Assocs.,*

116 F.3d 35 (2d Cir. 1997) (*pro se* employee's breach of contract claim was based upon an

employment contract that was not subject to the federal Labor Management Relations Act);

*Caggiano v. Pfizer Inc.*, 384 F. Supp. 2d 689 (S.D.N.Y. 2005) (consumer plaintiffs' common-law

negligence and other tort claims against drug manufacturers did not raise federal questions

because controlling Supreme Court authority specifically rejected the contention that labeling

standards under the federal Food, Drug and Cosmetic Act presented a "special circumstance"

warranting uniform interpretation by federal courts; in contrast, however, the court noted that

federal tax and securities law were matters of special federal concern, citing *Grable* and

*Frayler*); *Fermin v. Moriarty*, No. 96 Civ. 3022 (MBM), 2003 WL 21787351 (S.D.N.Y. Aug. 4,

2003) (*pro se* prisoner's breach of contract and malpractice case against his former private

attorney raised no 42 U.S.C. § 1983 claim, and the mere fact that the alleged wrongdoing

occurred during a federal criminal case did not create any federal questions); *Rivera v. Phipps*

*Houses Servs., Inc.*, No. 01 Civ. 2324 (HB), 2001 WL 740779 (S.D.N.Y. 2001) (relying upon a

1986 Supreme Court decision which was substantially narrowed and modified by the 2005

decision in *Grable*[2], the court held that the absence of a private right of action to enforce the

---

[2] *Rivera* (and many of the other cases cited by Deutsche Bank) relied heavily on *Merrell Dow Pharmaceuticals, Inc. v. Thompson*, 478 U.S. 804 (1986). Significantly, however, the Supreme Court substantially narrowed its holding in *Merrill Dow* in its 2005 decision in *Grable*, observing that "*Merrill Dow* should be read in its entirety as treating the absence of a federal

federal housing standards referenced in plaintiff tenants' leases mandated a finding that there

was no federal question presented); *J.A. Jones Constr. Co. and Daidone Elec. of N.Y., Inc. v. City

of New York*, 753 F. Supp. 497 (S.D.N.Y. 1990) (also relying upon *Merrill Dow*[3], the court held

that the absence of a private right of action to enforce the Environmental Protection Agency

regulations referenced in plaintiff's construction contract mandated a finding that there was no

substantial federal question presented); *Runyan v. River Rock Entm't Auth.*, No. 08 Civ. 1924

(VRW), 2008 WL 3382783 (N.D. Cal. Aug. 8, 2008) (no federal question jurisdiction over

former employee's claims for breach of employment contract  and related torts against a casino

operated by a federally recognized Indian tribe inasmuch as there was no evidence that Congress

intended for the Indian Gaming Regulatory Act to preempt completely all state regulation of

employment relationships in Indian gaming facilities); *Quayle v. MCI Worldcom,Inc.*, No. C-00-

3694 (SC), 2001 WL 1329594 (N.D. Cal. Oct. 22, 2001) (state consumer law claims against

defendant communications company did not raise any substantial federal questions because the

claims were based upon allegedly deceptive practices that were <u>not</u> revealed to the federal

government and thus there was no need to interpret any document filed with -- or any action

taken or sanctioned by -- the federal government).

### 2.    Deutsche Bank Creates A Straw Man By Mischaracterizing Defendants' Contentions.

Even when it addresses the securities law context, Deutsche Bank's brief (pp. 7-8)

creates a straw man by misleadingly suggesting that Defendants are contending that the mere

filing of a prospectus with the SEC creates federal question jurisdiction.  Deutsche Bank then

---

private right of action as evidence relevant to, but not dispositive of, the 'sensitive judgments
about congressional intent' that § 1331 requires." *Grable*, 545 U.S.at 318.

[3]   *See* n. 2 above.

seeks to rebut that straw man by citing cases in which courts found no federal question

jurisdiction where state-law fraud and other tort claims were based in part upon alleged

misrepresentations made in documents filed with the SEC.

Thus, for example, the plaintiffs in *Finance and Trading, Ltd. v. Rhodia S.A.*,

2004 WL 2754862 (S.D.N.Y. 2004), asserted common-law fraud and negligent

misrepresentation claims based in part upon statements made in a prospectus filed with the SEC.

Noting that the nature of the federal interest at stake must be carefully examined, the court held

that there was no substantial federal question presented because the state-law claims could be

decided without even consulting federal law:

> Assessing whether defendants committed fraud and
> negligent misrepresentation that happened to occur during a
> sale of securities does not implicate federal law. . . . There
> is no reason why the New York state common law
> standards for determining fraud and negligent
> misrepresentation cannot form the sole basis for assessing
> the prospectus. . . . . Plaintiffs' case poses no 'substantial
> federal question,' because it concerns solely the nature and
> consequences of certain oral and written representations
> made by defendants to plaintiffs. New York common law
> is fully capable of resolving plaintiffs' claims. . . . Federal
> law need not be construed or even consulted in the
> resolution of plaintiffs' common law claims.

*Id.* at **6-8. *See also Sung v. Wasserstein*, No. 05 Civ. 7138 (VM), 2006 WL 435449 (S.D.N.Y.

Feb. 21, 2006); *Frank v. Bear Stearns & Co.*, 128 F.3d 919 (5th Cir. 1997); *Firefighters' Ret.*

*Sys. v. Regions Bank,* No. 08-Civ. 429 (C), 2008 WL 4664015 (M.D. La. Oct. 21, 2008).

Here, in marked contrast, there is no allegation that Defendants made misleading

statements in their prospectus filed with the SEC.

Rather, Deutsche Bank is challenging Defendants' suspension of redemptions and

their implementation of a liquidation plan requiring that all investors be treated equally.  As

noted, the suspension was authorized both by the Investment Company Act and the SEC Order.
And, the liquidation plan is being implemented under the active supervision of the SEC and in
compliance with the Investment Company Act's anti-discrimination rule.

Notably, neither a money market fund's obligations concerning the redemption of
its shares under the Investment Company Act nor an order issued by the SEC were at issue in
*Rhodia* or in any of the other cases cited by Deutsche Bank.  In contrast, such matters are
essential components of Deutsche Bank's claim.

In short, nothing in Defendants' argument for removal would convert every claim
involving a money market fund into a federal claim.  However, claims alleging that the
Defendants violated their (federally imposed) obligations with respect to share pricing and
redemption perforce raise federal questions.  This is because they stem from a document whose
form and content are dictated by federal law and because they directly require the interpretation
and application of federal law as set forth in the Investment Company Act and in the regulations
issued thereunder and in the SEC Order.

Further, a federal question is substantial if it "involve[s] aspects of ]a] complex
federal regulatory scheme . . as to which there is a 'serious federal interest in claiming the
advantages thought to be inherent in a federal forum.'" *Broder v. Cablevision Sys. Corp.*, 418
F.3d 187, 195 (2d Cir. 2005) (quoting *Grable*, 545 U.S. at 313). The issues here easily satisfy
that standard.

The events of September 2008, and their profound market consequences, have
triggered very significant regulatory involvement in the payment of outstanding redemption
requests, the sale of Fund assets to meet outstanding redemption requests, the timing and
payment of interim distributions to investors, and the treatment of investors who initiated

- 17 -

redemption requests at different times during the week of September 15, 2008.

Deutsche Bank openly admits its desire to skirt the Primary Fund's liquidation plan and to jump ahead of the thousands of other shareholders receiving distributions under the plan. *See* Trachtenberg Decl., Ex. 2, p. 11 (Complaint) (Deutsche Bank seeks injunctive relief barring distributions to any other investors until and unless Deutsche Bank recoups 100% of its investment, plus interest). Such relief would directly contravene the Investment Company Act's anti-discrimination rule, which prohibits mutual funds from discriminating against shareholders and requires them to act in the interests of all shareholders equally. 15 U.S.C. § 80a-1(b)(3). In any event, one cannot seriously contend that attempting to interfere with the SEC-supervised liquidation plan, or seeking payment ahead of thousands of other investors in a federally-regulated money market fund, as Deutsche Bank is attempting to do, does not involve a substantial federal issue.

The intense federal interest in the operations of investment companies such as Defendants is heightened in light of recent extraordinary economic events, of which the Primary Fund's "breaking the buck" was a part. As Timothy F. Geithner, the Secretary of the Treasury, recently testified, the "vulnerability of [money market funds] to breaking the buck and the susceptibility of the entire prime [money market funds] industry to sharp withdrawals in such circumstances remains a significant source of systemic risk." *See* Trachtenberg Declar., Exh. 14 (March 26, 2009 Statement of Timothy F. Geithner to the United States House of Representatives' Committee on Financial Services).

Further, removal of this action is clearly "consistent with congressional judgment about the sound division of labor between state and federal courts." *Grable,* 545 U.S. at 313. This is not a situation in which a finding of jurisdiction based upon the focused, albeit important,

Investment Company Act issues raised by Deutsche Bank's pleading would effectively federalize every claim involving mutual funds.  Accordingly, for this Court to retain this case "would not materially affect, or threaten to affect, the normal currents of litigation."  *Id.*, at 319.

**CONCLUSION**

For the reasons set forth above, Defendants respectfully submit that Deutsche Bank's motion to remand should be denied.

Dated:  April 30, 2009

TRACHTENBERG RODES & FRIEDBERG LLP

By:_____

David G. Trachtenberg, Esq.
Judith L. Hancock, Esq.
545 Fifth Avenue
New York, New York 10017
Telephone:  (212) 972-2929
Fax:  (212) 972-7581

*Attorneys for Defendants The Reserve Fund and The Primary Fund*